UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERRI LYNN SERRA, individually
And on behalf of others similarly situated,

    Plaintiff,                                    Case No.:  8:18-cv-2682-VMC-AAS

v.

SHRINERS HOSPITALS FOR CHILDREN, INC.,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COUNTER-COUNTERCLAIMS AND MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Shriners Hospitals for Children, Inc. ("Shriners") moves to dismiss Plaintiff's Amended Counter-Counterclaims for retaliation with prejudice because:

(1) Defendants have the same Constitutional right to seek redress in Court as plaintiffs do without fear of retaliation suits;

(2) The Florida Litigation Privilege bars the retaliations claims pled by Plaintiff here;

(3) *Noerr-Pennington* Immunity bars retaliation claims against Shriners based on Shriners' exercise of its Constitutional rights;

(4) Compulsory counterclaims (like here) are not adverse employment actions by Shriners under the FLSA unless such counterclaims are proven by Plaintiff to be totally baseless; and, counterclaims are colorable based on existing law; and,

(5) Florida's private whistleblower act only protects against retaliatory personnel actions — not counterclaims filed in a lawsuit after an employee's employment has ended.

Shriners submits the following in support of its Motion.

1

**I.     CLAIMS AT ISSUE**

On October 9, 2018, Plaintiff filed the Complaint against Shriners in state court alleging unpaid overtime under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* (*See* Doc. 1.)  On November 1, 2018, Shriners removed the case to federal court.  (*See* Doc. 1.)

On November 8, 2018, Shriners filed its Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaims against Plaintiff.  (Doc. 4.)  Shriners brought two counterclaims, one alleging fraudulent misrepresentation and the other, breach of the implied covenant of good faith and fair dealing (Shriners' "Counterclaims").  Shriners' Counterclaims stem from misrepresentations Plaintiff made in a separation agreement in which Plaintiff represented that Shriners had paid Plaintiff all compensation to which she was entitled, and then, a few weeks after being paid under that agreement, alleged in this lawsuit that she has *not* been paid all compensation owed by Shriners and sought additional compensation.  Shriners' Counterclaims assert that Shriners relied on Plaintiff's misrepresentations in paying Plaintiff monies pursuant to the separation agreement.  In its Counterclaims, Shriners seeks to void the separation agreement and to obtain the return of the monies paid to Plaintiff pursuant to it.  Shriners' Counterclaims are colorable and not remotely baseless.  Cases exist holding as actionable similar claims to those made by Shriners in this case.  *See, e.g., Fitzgibbon v. ING Bank, fsb*, No. 07-735 JJF, 2008 U.S. Dist. LEXIS 65941, at *7-9 (D. Del. August 26, 2008), discussed *supra*.

On November 28, 2018, Plaintiff filed her answer to Shriners' Counterclaims and a Counter-Counterclaim alleging that Shriners' Counterclaims constitute actionable retaliation under the FLSA.  (Doc. 8.)  Plaintiff alleged that the FLSA's anti-retaliation provisions extend beyond workplace-related acts and harms because Shriners' Counterclaims were intended to dissuade Plaintiff and other employees from bringing or supporting claims under the FLSA.

(Doc. 8, ¶¶ 45-46.)  On December 26, 2018, Shriners filed a motion to dismiss Plaintiff's Counter-Counterclaim (Doc. 17).  On February 22, 2019, the Court granted Shriners' motion and dismissed Plaintiff's Counter-Counterclaim without prejudice because the Counter-Counterclaim failed to allege that Shriners' Counterclaims lacked a reasonable basis in either law or fact (Doc. 26).  The Court provided Plaintiff with the opportunity to amend her Counter-Counterclaim.  *See id.*

On March 1, 2019, Plaintiff filed an Amended Counter-Counterclaim revising the claim to include allegations that Shriners' Counterclaims lacked a reasonable basis in law or fact (as was required by the Court in its Order).  (Doc. 28, ¶ 16).  In addition, Plaintiff took this opportunity to add a new claim against Shriners for retaliation under Florida's private whistleblower act ("FWA"), Fla. Stat. § 448.102.[1]  Plaintiff did not assert a claim under the FWA in her original counter-counterclaim.  (Doc. 28, ¶¶ 21-26).  In this claim, Plaintiff alleges that, by bringing the Counterclaims, Shriners retaliated against her for objecting to, or refusing to participate in an activity, policy, or practice of Shriners which is in violation of a law, rule, or regulation.  *Id.* at ¶ 24.  As shown below, Plaintiff's allegations are unfounded and not supported by existing law, including holdings by this Court that are directly on point.

**II.    LEGAL ARGUMENT**

    **A.    Plaintiff's Counter-Counterclaims Are Barred By Florida's Litigation Privilege**

Plaintiff's retaliation claims under the FLSA and FWA are solely based on the fact that Shriners filed a counterclaim in this lawsuit.  However, Shriners' "right to petition has been

---

[1] Plaintiff's conduct of filing a new whistleblower retaliation claim in her Amended Counter-Counterclaim is contrary to the Court's Order allowing her to amend her Counter-Counterclaim, specifically, her FLSA retaliation claim. Nowhere in the Court's order did the Court permit Plaintiff to file an entirely new claim under a new statute. Further, Plaintiff's whistleblower claim is untimely as it was filed after the motion for summary judgment deadline and well past when the parties and the Court could reasonably expect to file a new claim. See (Doc. 26).

3

recognized as one of 'the most precious of the liberties safeguarded by the Bill of Rights,' and implies 'the very idea of a government in a republican form.'" *Kentish v. Madahcom, Inc.*, 566 F. Supp. 2d 1343, 1348 (M.D. Fla. 2008) (quoting *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002)). Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004). The privilege was initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings. *Id.* The Florida Supreme Court's rationale for expanding the scope of the litigation privilege was as follows:

> Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. **Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct**.

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 607-08 (Fla. 1994).

Because Shriners' Counterclaims were brought under Florida law, the Court must apply Florida law in evaluating the state law claims. *See id.* Accordingly, Plaintiff's retaliation claims based on Shriners' Counterclaims are barred by Florida's Litigation Privilege. *Kentish*, 566 F. Supp. 2d at 1348. **The Middle District of Florida has held that Florida's Litigation Privilege applies to a FLSA retaliation claim brought as the result of a counterclaim in a nearly identical case**. *See id.* at 1348-49. In *Kentish*, a FLSA lawsuit for unpaid overtime, the

defendant filed a counterclaim against the plaintiff seeking payment of business related expenses charged by the plaintiff to a commercial credit card. *Id.* at 1344. In response, the plaintiff sought leave to amend his complaint to add a claim that the defendant's counterclaim constituted illegal retaliation under the FLSA. *Id.* at 1345. The *Kentish* court analyzed whether Florida's Litigation Privilege applied and reasoned that "[a]llowing [p]laintiff to maintain its retaliation claim would restrict [d]efendant's access to courts and its right to petition…the Court concludes Florida's litigation privilege applies to [d]efendant's [c]ounterclaim." *Id.* at 1349. Further, the Court noted that allowing this type of retaliation claim would create a "race to the courthouse" scenario where defendant employers would be chilled from bringing perfectly legitimate claims against a plaintiff just because a plaintiff brought his/her FLSA claim first. *Id.* at n. 4. As a result, the Court denied the plaintiff's motion for leave to amend his complaint because the proposed claim for retaliation was futile because it was barred by Florida's Litigation Privilege. *Id.*

Regardless of whether the Court decides to follow *Kentish*, Plaintiff's FWA retaliation claim should be precluded because Florida's Litigation Privilege unequivocally applies to state law causes of action. The Florida Litigation Privilege "applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding." *Id.* As Plaintiff pointed out in her response to Shriners' original motion to dismiss Plaintiff's Counter-Counterclaim, courts have held that Florida's litigation privilege only applies to state causes of action, not federal causes of action. (See Doc. 20, pg. 4-5) (listing a number of examples of

courts stating that Florida's Litigation Privilege only applies to state court causes of action). Thus, by Plaintiff's own admission, her FWA cause of action should be barred because it is a state court cause of action.  For example, in *Idarraga v. Asset Acceptance, LLC*, 2015 U.S. Dist. LEXIS 180522, *8 (M.D. Fla. Sep. 29, 2015), the Middle District of Florida granted the defendant's motion to dismiss a plaintiff's state law claim under the Florida Consumer Collection Practices Act because it related to a judicial proceeding and thus was barred under Florida's Litigation Privilege.  *See also Gaisser v. Portfolio Recovery Assocs., LLC*, 571 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008) (same).  Therefore, Plaintiff's FWA retaliation claim is barred by Florida's Litigation Privilege and must be dismissed.

Defendants have the same right to seek redress in Court as plaintiffs do.  The fact that Plaintiff is a former employee of Defendant does not turn a claim legitimately brought into retaliation simply because Plaintiff wishes to prosecute her case unencumbered by valid claims for redress against her.  As in *Kentish*, plaintiffs, even those filing FLSA claims, cannot be allowed to impede Shriners' equal access to the courts, a right vigorously protected by Florida courts.  *See* Article I, Section 21 of the Florida Constitution.  Like *Kentish*, Florida's Litigation Privilege is an absolute bar to both Plaintiff's retaliation claims based solely on Shriners' Counterclaims and the Court should dismiss Plaintiff's Amended Counter-Counterclaims for failure to state a claim upon which relief can be granted.

      **B.**      **Plaintiff's Counter-Counterclaims Must Be Dismissed Because Shriners' Counterclaims are Immune under the *Noerr-Pennington* Doctrine**

The Supreme Court has described the right to petition as "among the most precious of the liberties safeguarded by the Bill of Rights" and "intimately connected, both in origin and in purpose with the other First Amendment rights of free speech and free press."  *United Mine Workers, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  *Noerr-Pennington*

6

immunity is a First-Amendment based doctrine that protects litigants from liability in connection with efforts to petition the government for resolution of a dispute. *Holleman v. Art Crating Inc.*, 2014 U.S. Dist. LEXIS 139916, at *160 (E.D.N.Y. Sep. 30, 2014). A lawsuit is a form of constitutionally protected petition for the redress of grievances. *See Cal. Motor Transp. Co. v. Trucking Unlimited.*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right to petition."). The *Noerr-Pennington* doctrine protects a party from liability for filing a lawsuit. *See Sabal Palm Condos. of Pine Island Ridge Ass'n v. Fischer*, No. 12-60691-Civ-SCOLA, 2014 U.S. Dist. LEXIS, at *73 (S.D. Fla. March 13, 2014) (The *Noerr-Pennington* doctrine precluded retaliation claim under the Fair Housing Act for a counterclaim filed in the underlying lawsuit); *Ungureanu v. A. Teichert & Son*, No. 11 Civ. 316 (LKK), 2012 U.S. Dist. LEXIS 46440, at *8-9 (E.D. Cal. Apr. 2, 2012) (dismissing the plaintiff's Title VII retaliation claim concerning the defendant's actions during workers' compensation proceedings where those actions fell under *Noerr-Pennington*); *Holleman*, 2014 U.S. Dist. LEXIS 139916, at *160 (E.D.N.Y. Sep. 30, 2014) (reasoning that if the plaintiff met her *prima facie* case, her retaliation claim under Title VII would be barred under *Noerr-Penningtion*).

      i.      <u>*Noerr-Pennington* Applies To Employment Litigation</u>

The *Noerr-Pennington* doctrine originally arose in the antitrust context; however, it now applies "equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). "The Eleventh Circuit has held that *Noerr-Pennington* immunity extends to litigation." *PODS Enters. v. ABF Freight Sys.*, No. 8:11-cv-84-T-33MAP, 2011 U.S. Dist. LEXIS 119657, at *9 (M.D. Fla. Oct. 17, 2011) (citing *Andrx Pharms., Inv. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir. 2005)). "[T]he majority of circuit courts have embraced the view that the *Noerr-Pennington* doctrine and related First Amendment protections bar liability for alleged violations of the civil

rights laws." *See, e.g., New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (noting that "*Noerr-Pennington* has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the [F]irst [A]mendment's speech and petitioning clauses" and applying the doctrine to a § 1983 claim); *Sanghvi v. City of Claremont*, 328 F.3d 532, 543 (9th Cir. 2003) (applying *Noerr-Pennington* immunity to bar retaliation claims under § 1983 and the FHA); *Herr v. Pequea Twp.*, 274 F.3d 109, 119 (3d Cir. 2003) (holding that *Noerr-Pennington* doctrine applies to municipality and affirming dismissal of § 1983 claim), *abrogated on other grounds by United Artists Theater Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003); *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000) (noting that *Noerr-Pennington* is a valid defense to § 1983 claims); *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000) (holding that *Noerr-Pennington* immunity barred a suit under §1983, noting that the "principle that led the Supreme Court to adopt the immunity principle in *Noerr* is equally applicable to the petitioning" at issue in that case).

      The Southern District of Florida has held that *Noerr-Pennington* immunity applied to bar a retaliation claim brought under the Fair Housing Act ("FHA") based on the defendant bringing a lawsuit following plaintiff's filing of an FHA suit first. *See Sabal Palm Condos. of Pine Island Ridge Ass'n*, 2014 U.S. Dist. LEXIS, at *73. In *Sabal Palm Condos.*, the Fischers' sued for retaliation under the FHA alleging that Sabal Palm Condos instituted a declaratory judgment action in retaliation for the Fischers' claim under the FHA of housing discrimination. *Id.* at *67. The Court ultimately held that the retaliation claim must be dismissed because *Noerr-Pennington* immunity applied and thus Sabal Palm Condos' declaratory judgment lawsuit could not be the basis of the retaliation claim. *Id.* at 72-73. While the lawsuits involved different statutes, *Sabal*

*Palm Condos.* is analogous to the issues presented here and supports this Court applying *Noerr-Pennington* immunity to Shriners' Counterclaims in this case.

      ii.  <u>Shriners' Counterclaims Are Not "Objectively Baseless"</u>

Shriners' acknowledges that the *Noerr-Pennington* immunity is not completely absolute. *Id.* at 68. *Noerr-Pennington* ensures a citizen's or corporation's right to file a lawsuit without liability is unimpeachable unless the suit is a "sham," meaning objectively baseless. *Holleman*, 2014 U.S. Dist. LEXIS 139916, at *160. The party challenging immunity bears the burden to show that the lawsuit is a sham. *See Sabal Palm Condos. of Pine Island Ridge Ass'n*, U.S. Dist. LEXIS, at *68. The Supreme Court developed a two-part test to determinate if a lawsuit is a sham. *Id.* (citing *Professional Real Estate*, 508 U.S. at 60). The first part is objective: "the lawsuit must be objectively baseless in the sense that no reasonable litigant could reasonably expect to succeed on the merits." *Sabal Palm Condos. of Pine Island Ridge Ass'n*, U.S. Dist. LEXIS, at *68. The second part is subjective: "did the party bring the suit based on the party's belief that the process of the suit itself would further an illegal objective…rather than its belief that the potential outcome of the suit…made suing worthwhile." *Id.* Thus, if a party cannot prove the first part of the test — whether the claim is objectively baseless — *Noerr-Pennington* immunity applies and there is no need to delve into the second part of the test.[2] *See Professional Real Estate Investors, Inc.*, 508 U.S. at 56 ("An objectively reasonable effort to litigate cannot be a sham regardless of subjective intent.")

*Noerr-Pennington* immunity applies to Shriners' Counterclaims because Plaintiff cannot prove that the Counterclaims are objectively baseless. "Demonstrating that a lawsuit is objectively baseless is difficult." *Sabal Palm Condos. of Pine Island Ridge Ass'n*, U.S. Dist.

---

[2] Shriners had no retaliatory motive in filing its Counterclaims against Plaintiff; however, an analysis of this part is unnecessary and impossible at this stage in the proceedings.

LEXIS, at *69. The fact that a litigant may lose or loses does not show that the party's lawsuit was objectively baseless for purposes of *Noerr-Pennington* immunity. *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (citing *Professional Real Estate Investors, Inc.*, 508 U.S. at 56). Even if the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. *Professional Real Estate*, 508 U.S. at 60 n.5. In *White v. Lee*, a discrimination lawsuit under the FHA, the Court discussed the high threshold for a "sham" lawsuit in great detail and stated that "we do not likely conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave that action without the ordinary protections afforded by the First Amendment, a result we would reach only with great reluctance." 227 F.3d at 1232. When evaluating *Noerr-Pennington* immunity, it is necessary to apply a heightened level of protection…to avoid a chilling effect on the exercise of this fundamental First Amendment right." *Id.* at 1232 (internal quotations omitted).

Plaintiff here cannot meet the high threshold in proving that Shriners' Counterclaims are objectively baseless. This is evident by Plaintiff's failure to even allege that the Counterclaims are baseless or lack merit in its initial Counter-Counterclaim. *See* (Doc. 8). Shriners brought two counterclaims for fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealing against Plaintiff stemming from misrepresentations Plaintiff made in a separation agreement she executed with Shriners when her employment was terminated. In that separation agreement, she acknowledged she received all compensation and remuneration owed to her through her termination date as a result of the services she performed for Shriners. Shriners relied on Plaintiff's acknowledgement when it paid her monies pursuant to the separation agreement. Just weeks later, despite stating she was paid all compensation for

services rendered, Plaintiff filed a lawsuit under the FLSA for unpaid overtime — directly contradicting the acknowledgement she made in the separation agreement. Shriners contends that Plaintiff made this misrepresentation intentionally and in bad faith in order to collect twice — once under the separation agreement and again from this underlying lawsuit and simply seeks to obtain return of the separation pay and to void the agreement entirely.

Shriners' allegations satisfy the elements under Florida law for both causes of action. Plaintiff appears to concede this, having failed to move to dismiss the Counterclaims on the merits. Shriners did not bring a counterclaim for breach of the separation agreement because Plaintiff filed an FLSA claim. Such a claim would likely fail as a matter of law because FLSA claims cannot be waived unless supervised by Secretary of Labor or approved by the Court. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Rather, Shriners brought counterclaims because of Plaintiff's misrepresentations and breach of good faith during the separation agreement process. **District courts have held that similar allegations as those alleged by Shriners created a feasible cause of action that withstood dismissal.** *See Fitzgibbon v. ING Bank, fsb*, **2008 U.S. Dist. LEXIS 65941, at \*7-9.** In *Fitzgibbon*, the plaintiff sued under the FLSA for unpaid wages and the defendant filed a counterclaim alleging fraudulent misrepresentation and breach of contract arising from a settlement agreement and release. *Id.* Like here, the defendant did not bring a breach of contract action under the settlement agreement, but brought a fraudulent misrepresentation and breach of the implied covenant of good faith and fair dealing because the plaintiff made misrepresentations during the settlement process that all claims and disputes related to the employment were resolved. *Id.* at \*2-4. **The Court denied the plaintiff's motion to dismiss reasoning that neither claim attempted to enforce a waiver of FLSA rights and that both claims did state a**

**cause of action upon which relief could be granted.** *Id.* *7-9. Accordingly, Shriners' Counterclaims are not objectively baseless or sham litigation because they are viable causes of action. Therefore, Shriners' Counterclaims are immune under *Noerr-Pennington* and cannot be the basis of Plaintiff's FLSA or FWA retaliation claim. As such, Plaintiff's Amended Counter-Counterclaims must be dismissed.

### C. Plaintiff's Counter-Counterclaims Must Be Dismissed Because Shriners' Compulsory Counterclaims Are Not Adverse Employment Actions

If the Court denies Shriners immunity under both the Florida Litigation Privilege and *Noerr-Penningto*n immunity, then Plaintiff's FLSA Counter-Counterclaim should be dismissed for failure to state a claim because a compulsory counterclaim is not an adverse employment action under the FLSA. *Beltran v. Brentwood North Healthcare Ctr.*, LLC, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006). A compulsory counterclaim can only be considered an adverse employment action if it is totally baseless. *Orr v. James D. Julia, Inc.*, No. 07-51-B-W, 2008 U.S. Dist. LEXIS 49687, at *54 (D. Me. June 27, 2008); *Ergo v .Int'l Merch. Servs.*, 519 F. Supp. 2d 765, 781 (N.D. III. 2007); *Nesselrotte v. Allegheny Energy, Inc.*, Civ. No. 06-1390, 2007 U.S. Dist. Lexis 79147, *45-47 & n.25 (W.D. Pa. 2007). "**If the mere filing of a counterclaim were sufficient to give rise to a retaliation claim, then every defendant in an FLSA, Title VII, or ADA lawsuit who asserts a counterclaim would be subject to a retaliation claim.**"[3] *Beltran*, 426 F. Supp. 2d at 833-34.

####   i.   Shriners' Counterclaims Are Compulsory

"A claim is compulsory if a logical relationship exists between the claim and the counterclaim and if the essential facts of the claims are so logically connected that considerations

---

[3] Title VII retaliation analysis applies to claims under the FWA. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

12

of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Critical-Vac Filtration Corp. v. Minuteman Int'l Inc.*, 233 F.3d 687, 699 (2d Cir. 2000). An absolute identity of factual backgrounds is not required to render a counterclaim compulsory. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 588 (S.D.N.Y. 2010). Shriners' Counterclaims are compulsory because they are logically connected to the underlying FLSA lawsuit filed by Plaintiff. Shriners only became aware of Plaintiff's misrepresentation and breach of the implied covenant of good faith once Plaintiff filed her FLSA lawsuit. Plaintiff represented that she had been compensated for all services performed, which led to Shriners agreeing to pay her separation pay. A few weeks later, Plaintiff sued Shriners for unpaid overtime directly contradicting her assertion that she was paid all compensation and alerting Shriners of her misrepresentation and breach of good faith in the separation agreement and during the effectuation of that agreement. Shriners' Counterclaims are perfect examples of compulsory counterclaims that must be brought or be waived.

The filing of a compulsory counterclaim is a particularly unlikely basis for an FLSA retaliation claim. *Ergo*, 519 F. Supp. 2d at 781. First, the FLSA plaintiff will have already asserted his or her rights and thus it will not cause the plaintiff to hire a lawyer or incur significant additional expenses. *Id.* Second and most significantly, the defendant must bring compulsory counterclaims or risk waiving them. *Id.; Warner v. Sims Metal Mgmt.*, 2013 U.S. Dist. LEXIS 151815, at *4 (N.D. Cal. Oct. 21, 2013). Third, a counterclaim is unlikely to chill the plaintiff's exercise of his/her rights under the FLSA because plaintiff already initiated a lawsuit against the defendant. *Warner*, 2013 U.S. Dist. LEXIS 151815, at *4-5 (analyzing an ADEA claim). Lastly, allowing a plaintiff to file a retaliation counterclaim in response to a defendant's counterclaim will invite plaintiffs to depose the defendant's counsel, seek production

13

of documents related to the underlying action, and interfere with the defendant's attorney-client relationship. *Id.* This last factor will obviously cause numerous practical issues and obstruct the underlying litigation. These same issues will occur if Plaintiff is allowed to proceed with her FWA retaliation claim. Taking into consideration all these reasons, the Court cannot allow Plaintiff's retaliation claims based on Shriners' compulsory counterclaims to proceed.

ii. <u>Shriner's Counterclaims Are Not "Totally Baseless"</u>

Indeed, the only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless. *Ergo*, 519 F. Supp. 2d at 781. However, even a retaliation claim based on a totally baseless counterclaim would still infringe on the defendant's attorney-client privilege and be problematic practically speaking. *See Warner*, 2013 U.S. Dist. LEXIS 151815, at *4-5. Nevertheless, because Shriners' Counterclaims are compulsory, the only way Plaintiff can bring a retaliation claim based on those counterclaims is if she proves they are totally baseless.

In *Munroe v. PartsBase, Inc.*, 2009 U.S. Dist. LEXIS 15801, at *22 (S.D. Fla. Feb. 18, 2009), the plaintiff brought a claim for unpaid overtime under the FLSA and the defendants proceeded to bring a counterclaim for breach of confidentiality agreement and conversion. Like here, the plaintiff amended her complaint to add a claim for retaliation based on defendants' counterclaims. *Id.* The *Munroe* Court held that to be successful on this claim the plaintiff has to show that defendants' counterclaims were (1) filed for a retaliatory motive; and (2) lacked a reasonable basis on law or fact. *Id.* at *23. However, the Court stated, even assuming the retaliatory motive prong is met, "[p]laintiff's retaliation claim must fail if she cannot prove that the counterclaims lack a reasonable basis in fact or law." *Id.* at *24. The *Munroe* Court eventually ruled that Plaintiff's retaliation claim failed as a matter of law because she could not

show the counterclaims lacked a reasonable basis in fact or law. *Id.* at *25. Thus, an analysis of retaliatory motive is unnecessary unless Plaintiff can prove that Shriners' Counterclaims are totally baseless.

"Baseless" is a powerful pejorative that sets a difficult standard for Plaintiff to meet. *Orr v. James D. Julia, Inc.*, No. 07-51-B-W, 2008 U.S. Dist. LEXIS 49687, at *54 (D. Me. June 27, 2008). As discussed above, Shriners' Counterclaims are supported by facts and legal authority and are not objectively baseless. Therefore, as in *Munroe*, Plaintiff's retaliation claim will fail as a matter of a law. As such, Plaintiff's Counter-Counterclaims must be dismissed for failure to state a claim upon which relief could be granted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### D. Plaintiff's FWA Counter-Counterclaim Must Be Dismissed Because the FWA Only Protects Against Retaliatory Personnel Actions

Plaintiff's retaliation claim against Shriners fails because the FWA only protects employees from retaliatory personnel actions and a counterclaim in a lawsuit is not a personnel action. In pertinent part, the FWA states:

An employer may not take any retaliatory **personnel** action against an employee because the employee has:

(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.

(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.

(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102 (emphasis added). The FWA explicitly states that a "[r]etaliatory personnel action" means "the discharge, suspension, or demotion by an employer of an employee or any other **adverse employment action** taken by an employer against an employee in the terms and conditions of employment." Fla. Stat. § 448.101(5). Courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications." *Knowles v. Beverly Enterprises-Florida, Inc.*, 898 So. 2d 1, 5 (Fla. 2004). "Where possible courts must give full effect to all statutory provisions." *Id.* at *6. The plain language of the statute clearly precludes the employer from taking a "retaliatory personnel action" against an employee for engaging in one of three listed types of protected activity. *See* Fla. Stat. § 448.102. The FWA even lists specific examples of what a "personnel action" is — discharge, suspension, demotion. A counterclaim filed in a lawsuit occurring after an employee's employment has ended cannot possibly be a "personnel action" or an "employment action" that the Legislature envisioned when drafting the act. The Court cannot extend the FWA's protection to cover Plaintiff's retaliation claim. Thus, Plaintiff's whistleblower retaliation Counter-Counterclaim must be dismissed for failure to state a claim upon which relief can be granted.

**III. CONCLUSION**

Plaintiff's retaliation claims under the FLSA and FWA based on Shriners' compulsory counterclaims must be dismissed. First, both of Plaintiff's retaliation claims are barred by Florida's Litigation Privilege because the privilege affords absolute immunity for counterclaims filed in judicial proceedings. Even if the Court decides Florida's Litigation Privilege does not apply, Plaintiff's retaliation claims are also barred by *Noerr-Pennington* immunity which shields Shriners from liability for filing a counterclaim and exercising its First Amendment rights.

Shriners' Counterclaims are not objectively baseless as shown by existing law permitting identical claims to those made by Shriners here.[4]  Moreover, regardless of immunity, Plaintiff's FLSA retaliation claim should be dismissed because a compulsory counterclaim cannot be an adverse employment action under the FLSA unless the counterclaims are shown by Plaintiff to be totally baseless as a matter of law, something not only not pled by Plaintiff but which could not be shown as a matter of law.  Allowing Plaintiff's claim to proceed would not only create numerous practical difficulties, but it would further infringe on Shriners' First Amendment right to petition the courts.  Lastly, regardless of immunity, Plaintiff's whistleblower retaliation claim must be dismissed because the FWA only applies to retaliatory personnel actions — not counterclaims filed in a lawsuit.  For all of the reasons discussed above, Plaintiff's retaliation claims should be dismissed.

WHEREFORE, Defendant Shriners Hospitals for Children, Inc., respectfully requests that this Court dismiss Plaintiff's Amended Counter-Counterclaims with prejudice.

---

[4] Moving to dismissed based on immunity is properly brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (holding that a district court's dismissal of a claim based on the Florida Litigation Privilege under Rule 12(b)(6) was proper); *see also Behran v. Brentwood North Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) (dismissing plaintiff's claim under Rule 12(b)(6) because *Noerr-Pennington* applied).

Respectfully submitted,

By /s/ David M. Kalteux
  Tracey K. Jaensch
  Florida Bar No. 907057
  David M. Kalteux
  Florida Bar No. 118746

  FORD & HARRISON LLP
  101 E. Kennedy Boulevard
  Suite 900
  Tampa, FL  33602-5133
  Phone: 813-261-7800
  Fax: 813-261-7899
  tjaensch@fordharrison.com
  dkalteux@fordharrison.com

  Attorneys for Shriners Hospitals For Children, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 12, 2019, I hereby electronically filed the foregoing with the Clerk of Court by using CM/ECF system, which will send a notice of electronic filing to the following:

Wolfgang M. Florin
Christopher D. Gray
Florin, Gray, Bouzas, Owens, LLC
16524 Pointe Village Drive, Suite 100
Lutz, FL  33558
wolgang@fgbolaw.com
chris@fgbolaw.com

  /s/ David M. Kalteux
  Attorney

WSACTIVELLP:10429825.1